**CIVIL MINUTES – GENERAL**  **'O'**  **JS-6**

| Case No. | 2:18-cv-00133-CAS-PJWx | Date | April 8, 2019 |
| Title | SAMUEL MIRCOVICH v. REUTERS AMERICA, LLC ET AL. | | |

Present: The Honorable  CHRISTINA A. SNYDER

| Catherine Jeang | Laura Elias | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:          Attorneys Present for Defendants:

Eugene Long, Jr.                    Robert Dolinko

**Proceedings:**    DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OR,
IN THE ALTERNATIVE PARTIAL SUMMARY JUDGMENT
(Dkt. 20, filed March 8, 2019)

## I.    INTRODUCTION

On November 20, 2017, plaintiff Samuel Mircovich filed this action in the Superior Court of California for the County of Los Angeles against his former employer, Reuters America, LLC ("Reuters"), and Does 1 through 25, inclusive, alleging that his termination of employment was motivated by unlawful discrimination and retaliation. Dkt. 1-1 ("Compl."). Specifically, Mircovich alleges claims for (1) discrimination based on sexual orientation in violation of the California Fair Employment and Housing Act ("FEHA"), Cal. Gov. Code § 12920 et seq.; (2) discrimination based on age in violation of FEHA; (3) discrimination based on disability in violation of FEHA; (4) failure to provide reasonable accommodation in violation of FEHA; (5) retaliation in violation of FEHA; (6) whistleblower retaliation in violation of California Labor Code § 1102.5; (7) retaliation based on political beliefs and activities in violation of California Labor Code § 1102; (8) failure to prevent discrimination in violation of FEHA; (9) intentional infliction of emotional distress ("IIED"); (10) negligent infliction of emotional distress; and (10) negligent supervision and retention of employees. Compl. at 1. Reuters removed this action to this Court on January 5, 2018, pursuant to 28 U.S.C. § 1332(a) and 28 U.S.C. § 1441(b). Dkt. 1.

Reuters filed the instant motion for summary judgment on March 8, 2019, dkt. 20-1 ("MSJ"), along with a separate statement of uncontroverted facts and conclusions of law, dkt. 20-2 ("DSUF"). On March 18, 2019, Mircovich filed his opposition, dkt. 21 ("Opp'n"), and a statement of genuine disputes of material facts, dkt. 22 ("PDGF"). Mircovich did not file a separate statement of additional material facts, but rather directs

| | | | |
|---|---|---|---|
| **CIVIL MINUTES – GENERAL** | | **'O'** | **JS-6** |
| Case No. | 2:18-cv-00133-CAS-PJWx | Date | April 8, 2019 |
| Title | SAMUEL MIRCOVICH v. REUTERS AMERICA, LLC ET AL. | | |

the Court to the additional facts included in his response to Reuters's statement of uncontroverted facts.  <u>See generally</u>, Opp'n at 2–7.  Reuters filed a reply brief on March 25, 2019, dkt. 23 ("Reply"), as well as objections to evidence submitted in plaintiff's opposition, dkt. 23-1, and a reply to plaintiff's statement of genuine disputes of facts, dkt. 23-2.  The Court held a hearing on April 8, 2019.

Having carefully considered the parties' arguments, the Court rules as follows.

## II.  BACKGROUND

The following facts are not meaningfully disputed and are set forth for purposes of background.  Unless otherwise noted, the Court references only facts that are uncontroverted and as to which evidentiary objections have been overruled.

### A.  Mircovich's Employment with Reuters

In December 2004, Reuters hired Mircovich to be the Editor in Charge ("EIC"), West Coast Pictures in Southern California.[1]  Compl. ¶ 13; DSUF No. 1.  Mircovich's duties included managing and directing photographers for Reuters in the Western United States, including assigning photographers to cover entertainment and news stories.  DSUF No. 1.  Mircovich's work was stressful and demanding, and he often worked as many as 18 to 20 hours per day.  Compl. ¶ 14.  In or around late 2014, Mircovich began reporting to Rickey Rogers after Rogers became Reuters's EIC Pictures for the Americas.  DSUF No. 2.  Mircovich reported to Rogers for the remainder of his employment with Reuters.  <u>Id.</u> No. 3.

In the summer of 2016, Reuters began working on a global reduction in force ("2016 Q-4 RIF" or "RIF") to reduce costs and become more operationally efficient.  DSUF No. 4.  Over the next few months in the summer and fall of 2016, Rogers gave thought to the positions in his group that could be eliminated.  <u>Id.</u> No. 5.  In November 2016, Rogers discussed with Karen Hamilton, Reuters's Human Resources Business Partner, Americas, the positions within his group he was thinking of including in the RIF.  <u>Id.</u> No. 6.  Rogers had not included Mircovich's position among those to be eliminated, and Hamilton suggested that it was a position that could be eliminated with minimal impact on the business.  <u>Id.</u>  Rogers agreed to consider Hamilton's suggestion, and ultimately agreed to include the EIC, West Coast Pictures position in the RIF after

---

[1]    Prior to being employed by Reuters, Mircovich was employed as a photographer and photo-journalist.  PDGF No. 1.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL    'O'    JS-6

| Case No. | 2:18-cv-00133-CAS-PJWx | Date | April 8, 2019 |
|---|---|---|---|
| Title | SAMUEL MIRCOVICH v. REUTERS AMERICA, LLC ET AL. | | |

concluding that most of the responsibilities of that position could be handled by Reuters's North American Pictures Desk in Toronto, Canada ("Toronto Desk"). Id. Nos. 6, 7. The Toronto Desk was staffed by employees who assigned photographers to news and entertainment stories in the Americas—a function very similar to that performed by Mircovich, but on a larger scale because it had staffing for an 18-hour day with three shifts of editors. DSUF Nos. 8, 9. When Mircovich took vacations, one of his subordinates would work in conjunction with the Toronto Desk to ensure that Mircovich's duties were covered. Id. No. 10. Rogers believed that the Toronto Desk could assume a substantial portion of Mircovich's duties without adding any additional employees to the Toronto Desk, and that a relatively modest portion of Mircovich's duties could be performed by an existing Reuters employee. Id. Nos. 8, 11. Rogers was of the opinion that Mircovich's position could be eliminated without negatively impacting Reuters's coverage of news and entertainment photography in the Western United States. Id. No. 12. Sometime before December 6, 2016, Rogers informed Hamilton that he would include Mircovich's position—EIC West Coast Pictures—in the 2016 Q-4 RIF. Id. No. 13. Mircovich contends that his position was the only EIC position included in the 2016 Q-4 RIF. PDGF No. 28. On December 6, 2016, Reuters's Senior Human Resources Advisor emailed Hamilton with Mircovich's date of termination, notice date, and severance payment. DSUF No. 13; Dkt. 20-4, Declaration of Karen Hamilton ("Hamilton Decl.") ¶¶ 8–10, Ex. D (Dec. 6, 2016 Severance Email).

On December 9, 2016, before Reuters told Mircovich that his position was being eliminated, Mircovich emailed Rogers stating that he needed to take an unanticipated leave of absence. DSUF No. 14. Mircovich's request was promptly granted and he was placed on a leave of absence. Id. No. 15. Given that Mircovich's leave of absence was related to stress, Reuters chose to delay informing him of his layoff. Id. No. 16. After Mircovich had been on leave for about six months, Reuters decided to inform him of the earlier decision to eliminate his position. Id. No. 17. On June 22, 2017, Hamilton informed Mircovich that his employment was terminated because his position had been eliminated as part of the 2016 Q-4 RIF and provided him with paperwork confirming that decision. Id. No. 18. Mircovich's position was one of more than ten positions that were eliminated as part of the 2016 Q-4 RIF. Id. No. 19. Mircovich's termination was not based on his performance. PDGF No. 18. Mircovich's position has not been replaced since it was eliminated, and the duties of his position continue to be performed primarily by the Toronto Desk. DSUF No. 20.

**CIVIL MINUTES – GENERAL**     **'O'**     **JS-6**

| Case No. | 2:18-cv-00133-CAS-PJWx | Date | April 8, 2019 |
| Title | SAMUEL MIRCOVICH v. REUTERS AMERICA, LLC ET AL. | | |

**B.     Reuters's Alleged Discrimination based on Mircovich's Sexual Orientation**

Mircovich volunteered to Rogers that he was gay early in their working relationship.  DSUF No. 22.  Rogers and Hamilton knew for years that Mircovich was gay.  Id.  No one at Reuters ever used any homophobic names, made comments to Mircovich about his sexuality, or uttered any anti-gay slurs.  Id. No. 24; Dkts. 20-3, 21-2, Deposition Testimony of Samuel Mircovich ("Mircovich Depo.") 162:2–17.

Rather, Mircovich contends that he was subjected to harassment by Rogers based on his sexual orientation when Rogers asked Mircovich to cover the aftermath of the June 12, 2016 Pulse Nightclub shooting.  PDGF No. 23.  Mircovich broke the Pulse Nightclub story for Reuters, and that night, Rogers instructed him to find a photographer to cover the shooting.  Mircovich Depo. 163:4–19.  After spending hours trying to find a photographer, Mircovich eventually found a "stringer" to cover the shooting, and his photos made the front pages of newspapers all around the world.  Id. at 164:3–9.  A few days later, Rogers asked Mircovich if he wanted to go to Florida to cover the shooting.  DSUF No. 23; Mircovich Depo. at 164:25–165:1.  Mircovich declined and recalls stating, "No. Are you asking me because I'm gay?"  DSUF No. 23; Mircovich Depo. at 165:1–32.  According to Mircovich, Rogers stuttered and backpedaled in response.  Mircovich Depo. at 165:2–3.  Rogers did nothing to require Mircovich to cover the shooting.  DSUF No. 23.  Mircovich considered Rogers's request to be inappropriate because "[Rogers] shouldn't be asking [Mircovich] to do assignments based on his sexuality."  Mircovich Depo. at 165:10–12.  Mircovich also contends that he had not dealt with his emotions about the shooting when Rogers made his request.  Id. at 165:6–10.  Hamilton was not aware of this interaction between Mircovich and Rogers when she recommended to Rogers that Mircovich's position be included in the 2016 Q-4 RIF.  DSUF No. 23.

Mircovich also contends that he is the only EIC who was included in the RIF and that none of the other EICs, as far as he knows, are openly gay.  PDGF No. 28.

**C.     Reuters's Alleged Discrimination based on Mircovich's Age**

Mircovich was 57 years old as of December 6, 2016.  DSUF No. 26.  As of that date, Hamilton was 50 years old, and Rogers was 59 years old.  Id. Nos. 30, 31.  Reuters did not hire anyone, younger or otherwise, to replace Mircovich.  Id. No. 27.  Mircovich does not recall anyone at Reuters having made any age-related remarks to or about him.  Id. No. 28.  Rogers contends that he was and remains unaware of Mircovich's age, Dkt. 20-5, Declaration of Rickey Rogers ¶ 16, and Mircovich contends that Rogers would

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL    'O'    JS-6

| Case No. | 2:18-cv-00133-CAS-PJWx | Date | April 8, 2019 |
| Title | SAMUEL MIRCOVICH v. REUTERS AMERICA, LLC ET AL. | | |

have been aware of his approximate age, Dkt. 21-7, Declaration of Samuel Mircovich ("Mircovich Decl.") ¶ 12.

### D.    Reuters's Alleged Discrimination based on Mircovich's Disability

Mircovich has stress-induced depression. PDGF No. 33. As early as 2015, Mircovich casually advised Rogers that he was taking medication and seeing a therapist. DSUF No. 33. Rogers said nothing in reply and Mircovich saw his therapist whenever he wished. Id. Mircovich also used sick leave as a result of his stress-induced depression, and Mircovich contends that Rogers was aware that he was taking sick days "to deal with his depression." PDFG No. 32. At some point towards the end of 2016, Mircovich told Rogers that his condition makes it difficult for him "to trust that people treat [him] fairly because a lot of things are happening around [him], and [he's] come to realize that, probably, a lot of people were doing things without my knowledge." Mircovich Depo. 282:21–283:4. Mircovich is unaware that anyone at Reuters, aside from Rogers, knew that he was taking medication. DSUF No. 34. No one at Reuters, including Rogers, made comments to Mircovich about his taking medication. Id. No. 35.

Mircovich's request for a leave of absence on December 9, 2016 was the only time he requested a leave or any formal accommodation during his employment with Reuters. DSUF No. 36. Prior to this date, Hamilton was unaware of Mircovich's mental health issues, his need for a leave of absence, or his need to take time off to attend therapist appointments. Id. No. 37.

### E.    Reuters's Alleged Retaliation on the Basis of Mircovich's Verbal and Written Complaints about Lucy Nicholson and Rogers

Lucy Nicholson was hired by Reuters as a sports photographer in or around 2005. Compl. ¶ 15. Sometime after she was hired, Mircovich became Nicholson's supervisor. Id. According to Mircovich, Nicholson was difficult to manage from their first lunch together where she told him that she would not be managed by him. Mircovich Depo. 102:13–18. For example, in 2007, while working as part of team covering wildfires in San Diego, Nicholson refused to cover a fire in the community of Fallbrook, California, which resulted in Reuters not being able to gain entry into the Fallbrook area and take pictures until several days later. PDGF No. 39. According to Mircovich, Nicholson also refused to cover the Santa Monica College shooting in June 2013 and instead opted to photograph a roller derby event. Id. Throughout his employment, Mircovich made various complaints about Nicholson revolving around her alleged insubordination and unwillingness to be managed by him. DSUF No. 39. Mircovich complained that

| | **CIVIL MINUTES – GENERAL** | | **'O'** | **JS-6** |
|---|---|---|---|---|
| Case No. | 2:18-cv-00133-CAS-PJWx | Date | April 8, 2019 | |
| Title | SAMUEL MIRCOVICH v. REUTERS AMERICA, LLC ET AL. | | | |

Nicholson did not respect him, did not want to be managed by him, and was insubordinate. Id. No. 41. Mircovich claims that his working relationship with Nicholson was one of his main stressors at work, and he felt that his complaints to various managers and his expressed desire to not supervise Nicholson were never adequately addressed. DSUF No. 40; Mircovich Depo. 105:14–106:8, 194:23–195:8, 196:18–200:5, 241:25–242:3.

In February 2015, after Rogers became Mircovich's supervisor, Rogers informed Mircovich that he was no longer going to manage Nicholson.[2] DSUF No. 42. It took approximately 18 months for Mircovich's supervision of Nicholson to transition completely to Rogers. Id. No. 43. Mircovich officially ceased supervising Nicholson in June 2016. Id. No. 44. During that 18-month transition period, Rogers asked Mircovich to provide a performance review of Nicholson for 2015. Id. No. 45. Mircovich believed that this request violated the Trust Principles of Reuters because he had not managed her during the entirety of that period.[3] DSUF No. 46. According to Mircovich, this was a request to compromise his ethics and submit a fraudulent review of an employee he was not actually supervising. PDGF No. 46. Mircovich raised his concerns with Rogers, and

---

[2]     Mircovich asserts that he was subject to harassment by his co-workers who laughed at him due to the limited management and supervisory authority he was allowed to have over Nicholson, PDGF No. 40, but in the deposition testimony that he relies on for this fact, Mircovich testified that "the Toronto desk kind of looked at [him] as a joke" because "maybe they found [him] redundant or something" or "maybe because they felt [he] was still the entertainment guy or something," Mircovich Depo. 133–34. The deposition testimony does not support Mircovich's assertion that he was subject to harassment because of his limited supervisory authority over Nicholson.

[3]     The relevant Trust Principle Mircovich identified in his deposition is: "Trust. We act with integrity and independence by holding ourselves and each other to be ethical and reliable in all we do. Uphold the trust principles of integrity, independence, and freedom from bias. Ensure accuracy and completeness in our delivery of product and services. Act ethically and with transparency. Show consistency between what we say and what we do." Mircovich Depo. 396:19–397:13.

| | | | | |
|---|---|---|---|---|
| | **CIVIL MINUTES – GENERAL** | | **'O'** | **JS-6** |
| Case No. | 2:18-cv-00133-CAS-PJWx | Date | April 8, 2019 | |
| Title | SAMUEL MIRCOVICH v. REUTERS AMERICA, LLC ET AL. | | | |

Mircovich was ultimately not required to conduct a performance evaluation of Nicholson. DSUF No. 47. Mircovich also raised his concerns to Hamilton.[4] PDGF No. 47.

### F. Reuters's Alleged Retaliation Against Mircovich Based on his Political Views

Mircovich states that he was conservative and expressed support for the Republican party in 2015 and later. PDGF No. 53. During this time, Mircovich contends that his workplace was "severely skewed in favor of liberals and the democratic party," and that his workplace was "dominated by individuals with a clear anti-conservative bias."[5] Id. The political atmosphere of 2016 was stressful to Mircovich due to his Republican political leanings and the "tone of replies that [he] saw from [his] colleagues on Facebook . . . and at the national convention and just given the tenor of the times and what the news media had fallen into." DSUF No. 57; Mircovich Depo. 354:5–16. Mircovich contends that the other EICs, who were not included in the RIF, are not conservative. PDGF No. 28.

In April 2017, Mircovich entered into a political exchange on Facebook with his colleague Jim Borg, an EIC located in Washington, D.C. DSUF Nos. 53, 54. According to Mircovich, Mircovich complained to Borg because Borg was posting inappropriate comments of a political nature that violated company policy and journalistic ethics. PDGF No. 53. Borg and Mircovich subsequently engaged in a contentious exchange online. DSUF No. 55.

---

[4]    Mircovich also represents that Hamilton told him to find new employment when he complained of Rogers's request, PDGF No. 47, but in the deposition testimony he relies on for this fact, Mircovich testified that Hamilton told him he could find somewhere else to work in response to his complaint that Nicholson was getting away with being insubordinate, Mircovich Depo. 197–199. The record does not indicate that Mircovich ever complained to Hamilton about his limited supervisory authority over Nicholson.

[5]    Mircovich also asserts that he was singled out and called a racist because of his support for the Republican party, PDGF No. 53, but in the deposition testimony he relies on for this proposition, Mircovich only discussed views about President Trump in general terms and did not identify who singled him out and called him a racist, nor when any such event occurred, Mircovich Depo. at 109:9–24.

**CIVIL MINUTES – GENERAL**     **'O'**     **JS-6**

| Case No. | 2:18-cv-00133-CAS-PJWx | Date | April 8, 2019 |
|---|---|---|---|
| Title | SAMUEL MIRCOVICH v. REUTERS AMERICA, LLC ET AL. | | |

## III.  LEGAL STANDARD

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.  R.  Civ.  P.  56(a).  The moving party bears the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each claim upon which the moving party seeks judgment.  See Celotex Corp. v. Catrett, 477 U.S.  317, 323 (1986).

If the moving party meets its initial burden, the opposing party must then set out specific facts showing a genuine issue for trial in order to defeat the motion.  Anderson v. Liberty Lobby, Inc., 477 U.S.  242, 250 (1986); see also Fed.  R.  Civ.  P.  56(c), (e).  The nonmoving party must not simply rely on the pleadings and must do more than make "conclusory allegations [in] an affidavit." Lujan v. Nat'l Wildlife Fed'n, 497 U.S.  871, 888 (1990); see also Celotex, 477 U.S.  at 324.  Summary judgment must be granted for the moving party if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322; see also Abromson v. Am. Pac. Corp., 114 F.3d 898, 902 (9th Cir.  1997).

In light of the facts presented by the nonmoving party, along with any undisputed facts, the Court must decide whether the moving party is entitled to judgment as a matter of law.  See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 631, n.3 (9th Cir. 1987).  When deciding a motion for summary judgment, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." Matsushita Elec.  Indus. Co. v.  Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted); Valley Nat'l Bank of Ariz. v. A.E.  Rouse & Co., 121 F.3d 1332, 1335 (9th Cir.  1997).  Summary judgment for the moving party is proper when a rational trier of fact would not be able to find for the nonmoving party on the claims at issue.  See Matsushita, 475 U.S.  at 587.

## IV.  DISCUSSION

### A.  Discrimination and Retaliation Claims

Mircovich asserts in his first, second, third, fifth, sixth, and seventh claims that Reuters wrongfully terminated him in violation of either FEHA or the California Labor Code.  In evaluating claims for employment discrimination, California has adopted the three-part burden shifting test set forth in McDonnell Douglas v. Green, 411 U.S. 792

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**   **'O'**   **JS-6**

| Case No. | 2:18-cv-00133-CAS-PJWx | Date | April 8, 2019 |
| Title | SAMUEL MIRCOVICH v. REUTERS AMERICA, LLC ET AL. |

(1973).  Guz v. Bechtel Nat'l, Inc., 24 Cal.4th 317, 354 (2000).  Once the plaintiff has made a prima facie showing of employment discrimination, "the burden then shifts to the employer to offer a legitimate, nondiscriminatory reason for the adverse employment action."  Deschene v. Pinole Point Steel Co., 76 Cal. App. 4th 33, 44 (1999).  If the employer offers such a reason, "plaintiff must offer evidence that the employer's stated reason is either false or pretextual, or evidence that the employer acted with discriminatory animus, or evidence of each which would permit a reasonable trier of fact to conclude the employer intentionally discriminated."  Id.  The same burden-shifting analysis applies to claims of retaliation under FEHA and section 1102.5 of the California Labor Code.  See Akers v. County of San Diego, 95 Cal. App. 4th 1441, 1453 (2002).  The Court first analyzes whether there are triable questions as to Mircovich's prima facie case for each of his claims of discrimination and retaliation.

### 1.    Prima Facie Case of Discrimination

FEHA makes it unlawful for an employer to discriminate against employees on various bases, including sexual orientation, age, and mental disability.  Cal. Govt. Code § 12940(e).  To state a prima facie discrimination case under FEHA, a plaintiff must establish that: (1) he was a member of a protected class; (2) he was performing competently in the position he held; (3) he suffered an adverse employment action, such as termination; and (4) some other circumstances suggest discriminatory motive.  Guz, 24 Cal.4th at 355.

### i.    Discrimination Based on Sexual Orientation

With respect to Mircovich's claim of discrimination based on sexual orientation, it is undisputed that no one at Reuters ever used any homophobic names, made comments to Mircovich about his sexuality, or uttered any anti-gay slurs.  DSUF No. 24.  According to Mircovich, his termination was motivated by sexual orientation discrimination because: (1) his position was the only EIC position that was eliminated, and he is not aware of any other gay EICs whose positions were retained; (2) Mircovich was subjected to increased discipline and scrutiny while Nicholson, who is not gay, was not; and (3) he was subject to harassing conduct based on his sexual orientation by Rogers when he asked Mircovich to cover the Pulse Nightclub shooting, and Rogers was a key decision maker in his termination.  Opp'n at 8–9.  Reuters argues that Mircovich has failed to establish any causal link between his sexual orientation and his termination.  Reply at 2.

As an initial matter, it is clear that Mircovich has satisfied the first and third elements based on his sexual orientation and the fact he was terminated.  Reuters does not

| | CIVIL MINUTES – GENERAL | | 'O' | JS-6 |
|---|---|---|---|---|
| Case No. | 2:18-cv-00133-CAS-PJWx | Date | April 8, 2019 | |
| Title | SAMUEL MIRCOVICH v. REUTERS AMERICA, LLC ET AL. | | | |

challenge whether Mircovich satisfies the second element regarding his job performance. However, with respect to the fourth element, Mircovich has failed to provide any evidence of circumstances suggesting a discriminatory motive when Reuters included his position in the RIF.

First, with respect to the argument that Mircovich's position was the only EIC position that was terminated and that no other gay EIC was retained, there is no admissible evidence in the record that supports this contention. The list of terminated positions upon which Mircovich relies for this proposition indicates that an EIC position for Company News, America was eliminated along with Mircovich's EIC position. Dkt. 21-6 at 29. And the only evidence Mircovich provides to support his claim that no other gay EIC was retained is his own belief that this was the case. See PDGF No. 18 (citing Mircovich Decl. ¶ 16). There is nothing in the record either laying the foundation for Mircovich's knowledge of the sexual orientation of the other EICs nor substantiating Mircovich's belief that this was the case. The evidentiary record establishes only that Mircovich is gay and that his position was included in the RIF, and this alone is insufficient to create a triable issue as to whether Reuters acted with a discriminatory motive when it included him in the RIF. But even if it is assumed arguendo that Mircovich is correct in his belief that no other gay EIC was retained, there is no showing that the inclusion of his position in the RIF was related to his sexual orientation, nor as shown below, any showing of pretext.

Second, with respect to Mircovich's usage of Nicholson as a comparator, Nicholson and Mircovich are not similarly situated employees because Mircovich was an EIC and Nicholson was his subordinate and a photographer. See Vasquez v. County of Los Angeles, 349 F.3d 634, 641 (9th Cir. 2003) ("[I]ndividuals are similarly situated when they have similar jobs and display similar conduct. . . . Employees in supervisory positions are generally deemed not to be similarly situated to lower level employees."). The fact that Mircovich's position was eliminated and Nicholson's was not is irrelevant for purposes of determining whether Mircovich's termination was motivated by sexual orientation discrimination.

Finally, with respect to Mircovich's argument that Rogers harassed him based on his sexual orientation, the Court observes that Mircovich merely speculates that Rogers asked Mircovich to cover the Pulse Nightclub shooting because he is gay. But even assuming that Rogers did ask Mircovich to cover the shooting because Mircovich is gay, there is nothing in the record that supports an inference that Rogers made this request

| | | | |
|---|---|---|---|
| **CIVIL MINUTES – GENERAL** | | **'O'** | **JS-6** |
| Case No. | 2:18-cv-00133-CAS-PJWx | Date | April 8, 2019 |
| Title | SAMUEL MIRCOVICH v. REUTERS AMERICA, LLC ET AL. | | |

with discriminatory animus or that this request amounted to harassing conduct. [6]  The Court also finds that the fact that Rogers made this request in June 2016—more than five months before he included Rogers in the RIF—defeats an inference that Rogers decided to include Mircovich in the RIF because he is gay.[7]

Even when viewing the evidentiary record in the light most favorable to Mircovich, there is nothing in the record that suggests that anybody at Reuters ever acted with discriminatory animus toward Mircovich because he is gay, much less that Mircovich's sexual orientation played any role in Reuters's decision to include his position in the RIF.  The Court thus finds that Mircovich has failed to create a genuine

---

[6]    In his deposition, Mircovich testified that he believed it would have been illegal for Rogers to ask him to cover the Pulse Nightclub shooting even if Rogers believed that Mircovich's familiarity with the gay community would have resulted in better coverage:

> Q:    Did it cross your mind in any manner, shape or form that being familiar with the gay community that you might be able to do a better job than someone else who's not?
>
> A:    It doesn't matter.  It's illegal to ask.

Mircovich Depo. 166:4–8.  Notwithstanding Mircovich's belief that this request was illegal, the Court finds that the facts in the record do not support an inference that Rogers made this request with any discriminatory intent or animus.

[7]    At oral argument, counsel for plaintiff argued that the Court should apply section 12923 of the California Government Code to find that the fact that Rogers asked Mircovich to cover the Pulse Nightclub shooting is sufficient to create a triable issue as to plaintiff's wrongful termination.  Section 12923 provides that "[a] single incident of harassing conduct is sufficient to create a triable issue regarding the existence of a hostile work environment if the harassing conduct has unreasonably interfered with the plaintiff's work performance or created an intimidating, hostile, or offensive work environment."  Cal. Gov't Code § 12923(b).  The Court finds that section 12923 does not apply because plaintiff does not assert a hostile work environment claim and because there is no evidence in the record supporting an inference that Rogers's request "unreasonably interfered" with Mircovich's work performance nor that it "created an intimidating, hostile, or offensive work environment."  See id.

CIVIL MINUTES – GENERAL     'O'     JS-6

| Case No. | 2:18-cv-00133-CAS-PJWx | Date | April 8, 2019 |
| Title | SAMUEL MIRCOVICH v. REUTERS AMERICA, LLC ET AL. | | |

issue of material fact as to an element of his prima facie case of sexual orientation discrimination. Accordingly, the Court **GRANTS** Reuters's motion for summary judgment with respect to Mircovich's first claim for discrimination based on sexual orientation in violation of FEHA.

### ii.    Discrimination Based on Age

As with his claim for sexual orientation discrimination, the parties do not dispute that Mircovich has satisfied the first through third elements with respect to his claim for age discrimination. However, with respect to the fourth element, Mircovich has again failed to provide any evidence suggesting that Reuters acted with a discriminatory motive when it included his position in the RIF.

Mircovich argues that his termination was motivated by age discrimination because Nicholson, who is younger than Mircovich, was not subject to any discipline despite a clear pattern of insubordination. Opp'n at 9. The Court explained above that Nicholson cannot be used as a comparator because her duties were different than those of Mircovich and because she was not a supervisor. Accordingly, this alleged fact does not create a triable issue as to whether Reuters acted with a discriminatory motive.

Mircovich otherwise fails to proffer any evidence suggesting that Reuters acted with a discriminatory motive. Mircovich does not claim that anybody at Reuters ever made any age-related comments to him. DSUF No. 28. The persons who decided to include Mircovich in the RIF were also close to him in age. See Pascual v. Astrue, No. C08-2906 SBA, 2009 WL 1125702 (N.D. Cal. 2009) (granting summary judgment and noting that plaintiff's claims were "undermined by the fact that the decision-maker . . . is in the same protected classes as her."). In claims for age discrimination, a plaintiff may also satisfy the fourth element by demonstrating that he was replaced by substantially younger employees with equal or inferior qualifications. Santillan v. USA Waste of California, Inc., 853 F.3d 1035, 1043 (9th Cir. 2017); Schechner v. KPIX-TV, 686 F.3d 1018, 1023 (9th Cir. 2012). Here, however, it is undisputed that nobody, much less a younger person, was selected to replace him. DSUF No. 27.

The Court thus finds that Mircovich has failed to create a genuine issue of material fact as to an element of his prima facie case of age discrimination. See Gatzek v. Lynnwood Unified Sch. Dist., No. CV 07-05062 DDP (CTx), 2009 WL 10673325, at *5 (C.D. Cal. 2009) (granting summary judgment after observing that the plaintiff provided no evidence to support an inference of age-based harassment besides the fact that he was over 40). Accordingly, the Court **GRANTS** Reuters's motion for summary judgment

**CIVIL MINUTES – GENERAL**     **'O'**     **JS-6**

| Case No. | 2:18-cv-00133-CAS-PJWx | Date | April 8, 2019 |
|---|---|---|---|
| Title | SAMUEL MIRCOVICH v. REUTERS AMERICA, LLC ET AL. | | |

with respect to Mircovich's second claim for discrimination based on age in violation of FEHA.

### iii.     Discrimination Based on Mental Disability

Mircovich also asserts that his termination from employment was motivated by disability discrimination because Rogers was aware that Mircovich experienced depression that required medication and that Mircovich took sick days to "deal with his depression." Opp'n at 6. And according to Mircovich, "[g]iven the fact that [he] was terminated while on disability-related leave, a reasonable finder of fact could find that the termination was connected to the use of leave." Id.

Reuters, on the other hand, has adduced undisputed evidence demonstrating that Reuters decided to include Mircovich's position in the RIF before Mircovich asked to take a leave of absence. DSUF No. 14. It is also undisputed that Mircovich first told Rogers that he took medication for depression as early as 2015, more than a year before his position was included in the RIF, and that no one at Reuters, including Rogers, ever made comments, much less negative comments, to Mircovich about his taking medication. Id. Nos. 33, 35.

Mircovich fails to provide any evidence suggesting that his termination was motivated by disability discrimination. The Court thus finds that Mircovich has failed to create a genuine issue of material fact as to an element of his prima facie case of disability discrimination. Accordingly, the Court **GRANTS** Reuters's motion for summary judgment with respect to Mircovich's third claim for discrimination based on disability in violation of FEHA.

### 2.     Prima Facie Case of Retaliation in Violation of FEHA and Section 1102.5

Under FEHA, it is unlawful for an employer "to discharge, expel, or otherwise discriminate against any person because the person has opposed any practices forbidden under this part or because the person has filed a complaint, testified, or assisted in any proceeding under this part." Cal. Gov't Code § 12940(h). And section 1102.5 of the California Labor Code—a "whistleblower" statute—makes it unlawful for an employer to "retaliate against an employee for disclosing information . . . to a person with authority over the employee or another employee who has the authority to investigate, discover, or correct the violation or noncompliance . . . if the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation

**CIVIL MINUTES – GENERAL**   **'O'**   **JS-6**

| Case No. | 2:18-cv-00133-CAS-PJWx | Date | April 8, 2019 |
|----------|------------------------|------|---------------|
| Title | SAMUEL MIRCOVICH v. REUTERS AMERICA, LLC ET AL. |

of or noncompliance with a local, state, or federal rule or regulation[.]" Cal. Lab. Code § 1102.5(b). "[T]o establish a prima facie case of retaliation under either FEHA, a plaintiff must show (1) he or she engaged in a 'protected activity,' (2) the employer subjected the employee to an adverse employment action, and (3) a causal link existed between the protected activity and the employer's action." Yanowitz v. L'Oreal USA, Inc., 36 Cal. 4th 1028, 1042 (2005) (citation omitted). The same standard applies to establish a prima facie case of retaliation under section 1102.5. See Mokler v. County of Orange, 157 Cal. App. 4th 121, 138 (2007).

Mircovich argues that he was terminated in retaliation for his complaints to Rogers and Hamilton about being required to submit an evaluation of Nicholson after being asked to no longer supervise her.[8] Opp'n at 12. Mircovich, however, does not identify which law or regulation that he believed Rogers had violated, and there is nothing in the record demonstrating that Mircovich complained that Roger's request was either discriminatory or illegal.[9] Rather, Mircovich's complaints concerned his working

---

[8] Although he does not expressly argue this in his opposition, Mircovich's deposition testimony which he quotes in his statement of genuine disputes of material facts suggests that he believes he complained to Rogers about discrimination when he told Rogers that his "condition" made it difficult to trust that people were treating him fairly. DSUF No. 50; Mircovich Depo. at 282:17–24. However, Mircovich acknowledged that he did not use the word "discrimination" when he allegedly made this statement to Rogers. Id. at 282:17–21. It does not appear that this statement constituted a complaint of unlawful discrimination under either FEHA or section 1102.5 because he did not reference how other people treated him, only how his own condition made it difficult for him to trust others. Moreover, this "complaint" occurred in 2016, nearly a year before Rogers decided to include his position in the RIF, which defeats an inference of a causal link between this statement and Mircovich's termination.

[9] At oral argument, counsel for plaintiff argued that plaintiff did complain of illegal conduct because he believed that Rogers had asked him to commit fraud. However, there is nothing in the record indicating that Mircovich complained to Reuters that he was asked to commit fraud. Rather, in his deposition, Mircovich testified that he understood Rogers's request to be a violation of Reuters's Trust Principles:

Nowhere in the trust principles does it say that I can – that I should submit a false document, a review of a woman who [I] had been told not to manage anymore, and that's what Mr. Rogers asked [me] to do. He asked me to put

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**       **'O'**       **JS-6**

| Case No. | 2:18-cv-00133-CAS-PJWx | Date | April 8, 2019 |
| Title | SAMUEL MIRCOVICH v. REUTERS AMERICA, LLC ET AL. |

relationship with Nicholson and what he perceived to be an unethical request by Rogers for him to conduct an evaluation of Nicholson. Complaints of this nature do not constitute protected activity under FEHA or section 1102.5. See Lewis v. City of Fresno, 834 F. Supp. 2d 990, 1002 (E.D. Cal. 2011) ("In order to constitute protected activity, [a plaintiff's] conduct must have alerted his employer to his belief that discrimination, not merely unfair personnel treatment, had occurred.") (internal quotation marks omitted); Lanagan v. Santa Cruz County Metro Transit Dist., No. C09-01835 HRL, 2010 WL 1838984, at *5 (N.D. Cal. 2010) (report of a co-employee's negligence "not protected activity [under FEHA] because it has nothing to do with the FEHA's prohibitions"); Fitzgerald v. El Dorado County, 94 F. Supp. 3d 1155, 1172 (E.D. Cal. 2015) ("To have a reasonably based suspicion of illegal activity, the employee must be able to point to some legal foundation for his suspicion—some statue, rule or regulation which may have been violated by the conduct he disclosed.").

The Court thus finds that Mircovich has failed to create a genuine issue of material fact as to whether he engaged in protected activity. Accordingly, the Court **GRANTS** Reuters's motion for summary judgment with respect to Mircovich's fifth and sixth claims for retaliation in violation of FEHA and section 1102.5.

**3.     Prima Facie Case of Retaliation Based on Political Beliefs**

Section 1102 of the Labor Code Section provides that "[n]o employer shall coerce or influence or attempt to coerce or influence his employees through or by means of threat of discharge or loss of employment to adopt or follow or refrain from adopting or following any particular course or line of political action or political activity." Cal. Lab.

---

aside my ethics so I could review a woman who he specifically told me not to manage. So I feel that's an egregious violation of the trust principles, and there's nowhere in the Reuters handbook, in the Reuters trust principles that say it's okay to lie on a performance evaluation.

Mircovich Depo. 113:21–114:5. Moreover, even if Mircovich did believe that Rogers had asked him to commit fraud in violation of some unspecified law, this belief would have been unreasonable. The Reuters Trust Principles appear to pertain to journalistic ethics, not performance reviews and other administrative matters. And it appears to have been entirely appropriate for Rogers to have asked Mircovich to conduct a review of Nicholson's performance during 2015 because Mircovich was still technically her supervisor during that time. DSUF No. 45.

| | CIVIL MINUTES – GENERAL 'O' JS-6 | | |
|---|---|---|---|
| Case No. | 2:18-cv-00133-CAS-PJWx | Date | April 8, 2019 |
| Title | SAMUEL MIRCOVICH v. REUTERS AMERICA, LLC ET AL. | | |

Code § 1102. Mircovich contends that the following facts constitute direct evidence of discriminatory intent: (1) he worked in an environment that was openly hostile to his political views; (2) he complained about his contentious Facebook exchange with Borg; and (3) he was called a racist for supporting the Republican party. Opp'n at 14.

None of these facts are sufficient to create a triable issue of fact. First, Mircovich has only provided evidence of his own speculation that certain of his co-workers were hostile to his political views by virtue of their own political views. This speculation alone is insufficient to create a triable fact as to whether Rogers and Hamilton decided to include his position in the RIF because of Mircovich's political beliefs. With respect to his Facebook exchange with Borg, this incident occurred in April 2017, after Reuters included his position in the RIF, and Borg was not a decision-maker with respect to Mircovich's termination. Thus, the fact that Mircovich and Borg had a heated discussion about politics does not support a finding that Reuters retaliated against Mircovich based on his political beliefs. Finally, Mircovich's assertion that he was called a racist for supporting the Republication party is too vague to create a triable issue. There is nothing in the record indicating who called him a racist and when it happened, and indeed, the record indicates that Mircovich did not proffer evidence of any specific incident where someone called him a racist. See Mircovich Depo. 109:9–24.

The Court thus finds that Mircovich has failed to create a genuine issue of material fact as to whether Reuters retaliated against him for his political views. Accordingly, the Court **GRANTS** Reuters's motion for summary judgment with respect to Mircovich's seventh claim for retaliation in violation of § 1102.

### 4. Whether Reuters Had a Legitimate, Non-Discriminatory Business Reason for Terminating Mircovich's Employment

Even if Mircovich had established a prima facie case for any of his discrimination or retaliation claims, which he has not, the Court finds that Reuters has articulated a legitimate, non-discriminatory business reason for terminating his employment. To be "legitimate," the employer's proffered reason need only be "facially unrelated to prohibited bias." Reid v. Google, Inc., 50 Cal. 4th 512, 520 n.2 (2010); see also McInteer v. Ashley Distribution Services, Ldt., 40 F. Supp. 3d 1269, 1284 (C.D. Cal. 2014) ("Defendants' 'burden is one of production, not persuasion, thereby involving no credibility assessment.'") (citing Day v. Sears Holdings Corp., 930 F. Supp. 2d 1146, 1169 (C.D. Cal. 2013)).

| | CIVIL MINUTES – GENERAL  'O'  JS-6 | | |
|---|---|---|---|
| Case No. | 2:18-cv-00133-CAS-PJWx | Date | April 8, 2019 |
| Title | SAMUEL MIRCOVICH v. REUTERS AMERICA, LLC ET AL. | | |

Reuters contends that Mircovich's employment was terminated because his position was included in an RIF to reduce costs and become more operationally efficient. DSUF No. 4. Because this reason is facially unrelated to his sexual orientation, age, disability, complaints, or political beliefs, Reuters has met its burden to proffer a legitimate, non-discriminatory reason for terminating Mircovich's employment.

### 5. Showing of Pretext

"Once an employer has articulated a legitimate, non-discriminatory business reason for terminating an employee, the burden shifts to the employee to provide substantial, responsive and admissible evidence that the employer's stated reason is a pretext and that the true reason for the termination was illegal discrimination." Faust v. California Portland Cement Co., 150 Cal. App. 4th 864, 875 (2007). Here, Mircovich's opposition is entirely devoted to arguing that he has established a prima facie case of discrimination not that the stated reason for his termination was pretextual, and Mircovich provides no evidence to support an argument that Reuters's stated reason for terminating him was a pretext for illegal discrimination or retaliation. Indeed, the record lacks any evidence that would create a genuine issue of material fact as to pretext.

Reuters, on the other hand, adduces undisputed evidence that it included Mircovich's position in the 2016 Q-4 RIF because his duties could be effectively covered by the Toronto desk without sacrificing the quality of Reuters's product. DSUF Nos. 6–12. Therefore, even assuming that Mircovich could establish a prima facie case for any of his discrimination or retaliation claims, the Court finds that his claims would fail because he has not shown that Reuters's stated reason for including Mircovich in the RIF was a pretext for discrimination or retaliation.

### B. Failure to Prevent Discrimination in Violation of FEHA

FEHA makes it unlawful for "an employer . . . to fail to take all reasonable steps necessary to prevent discrimination and harassment from occurring." Cal. Gov't Code § 12920(i). However, this statute does not create "a private right of action where there has been a specific factual finding that no such discrimination or harassment actually occurred at the [plaintiff's] workplace." Trujillo v. N. Cnty. Transit Dist., 63 Cal. App. 4th 280, 288–89 (1998). In light of the Court's dismissal of Mircovich's claims for discrimination under FEHA, Mircovich's claim for failure to prevent discrimination fails as a matter of law. The Court also observes that Mircovich fails to explain with any specificity how Reuters failed to take reasonable steps to prevent any alleged discrimination or harassment from occurring. See Opp'n at 14.

**CIVIL MINUTES – GENERAL**    **'O'**    **JS-6**

| Case No. | 2:18-cv-00133-CAS-PJWx | Date | April 8, 2019 |
|----------|------------------------|------|----------------|
| Title | SAMUEL MIRCOVICH v. REUTERS AMERICA, LLC ET AL. | | |

Accordingly, the Court **GRANTS** Reuters's motion for summary judgment with respect to Mircovich's eighth claim for failure to prevent discrimination.

### C.    Failure to Provide a Reasonable Accommodation in Violation of FEHA

FEHA makes it unlawful for an employer to "fail to make reasonable accommodation for the known physical or mental disability of an . . . employee." Cal. Gov't Code § 12940(m)(1). Mircovich contends that Reuters failed to accommodate his disability when it terminated his employment while he was on a leave of absence. Opp'n at 11. It is undisputed that the only time Mircovich ever asked for a formal accommodation was when he requested an leave of absence on December 9, 2017, and that Reuters immediately granted his request. DSUF Nos. 14, 15, 36. It is also undisputed that Reuters decided to include Mircovich in the RIF prior to December 6, 2017. Id. No. 13. Accordingly, Mircovich fails to create a genuine issue of material fact as to whether Reuters failed to provide him with an accommodation or that his employment was terminated because Reuters wanted to avoid granting him an accommodation.

Accordingly, the Court **GRANTS** Reuters's motion for summary judgment with respect to Mircovich's fourth claim for failure to provide a reasonable accommodation.

### D.    Intentional Infliction of Emotional Distress

A claim for intentional infliction of emotional distress exists when a plaintiff alleges that "(1) the defendant engaged in extreme and outrageous conduct with the intention of causing, or reckless disregard of the probability of causing, severe emotional distress to the plaintiff; (2) the plaintiff actually suffered severe or extreme emotional distress; and (3) the outrageous conduct was the actual and proximate cause of the emotional distress." Ross v. Creel Printing & Publ'g Co., 100 Cal. App. 4th 736, 744–45 (2002). Conduct is outrageous if it is "so extreme as to exceed all bounds of that usually tolerated in a civilized community." Conley v. Roman Catholic Archbishop of San Francisco, 85 Cal. App. 4th 1126, 1133 (2000). "Severe emotional distress means emotional distress of such substantial quality or enduring quality that no reasonable [person] in civilized society should be expected to endure it." Potter v. Firestone Tire & Rubber Co., 863 P.2d 795, 821 (Cal. 1993).

Reuters argues that Mircovich's IIED claim is barred by California's Workers' Compensation Act, which provides employees with the sole and exclusive remedy against an employer for injuries sustained and arising out of the course of employment.

| | CIVIL MINUTES – GENERAL | | 'O'    JS-6 |
|---|---|---|---|
| Case No. | 2:18-cv-00133-CAS-PJWx | Date | April 8, 2019 |
| Title | SAMUEL MIRCOVICH v. REUTERS AMERICA, LLC ET AL. | | |

Cal. Labor Code § 3602. Reuters also asserts that Mircovich has failed to adduce any evidence demonstrating that Reuters's conduct was extreme or outrageous. MSJ at 20–21.

With respect to the preemption issue, Mircovich argues that his IIED claim is not barred by the Workers' Compensation Act because Reuters's discriminatory acts were not a normal part of an employment relationship. Opp'n at 15. Mircovich does not respond to Reuters's argument that its conduct was not extreme or outrageous.

As an initial matter, the Court observes that the exclusive remedy provisions of the California Workers' Compensation Act would not bar plaintiff's claim for intentional infliction of emotional distress to the extent it is based on alleged discriminatory conduct not attributable to the normal parts of an employment relationship. See Calero v. Unisys Corp., 271 F. Supp. 2d 1172, 1178–79 (N.D. Cal. 2003) ("California case law is replete with cases where conduct of the employer or one of its agents or employees is so outside the bounds of conduct tolerated by a decent society that it may give rise to a claim for intentional infliction of emotional distress."). However, the Court has already concluded that there are no triable issues with respect to his discrimination claims.

The Court also finds that Mircovich has failed to offer evidence demonstrating conduct so extreme as to exceed all bounds of that usually tolerated in a civilized society. Even where an employee is callously fired for pretextual reasons and suffers emotional distress, that evidence would still be insufficient to support a claim for intentional infliction of emotional distress. See Buscemi v. McDonnell Douglas Corp., 736 F.2d 1348, 1352 (9th Cir. 1984). "There is nothing, as a matter of law, extreme and outrageous about the act of terminating an employee on the basis of unproven or false or even malicious accusations." McNaboe v. Safeway Inc., Case No. 13-cv-04174-SI, 2016 WL 80553, at *6 (N.D. Cal. Jan. 7, 2016). Even if Mircovich had adduced evidence that Reuters acted with some discriminatory or retaliatory intent, that evidence would still have to be accompanied by additional evidence demonstrating that Reuters's conduct was extreme or outrageous. Here, there is no evidence in the record that would create a triable issue as to extreme or outrageous conduct, nor does Mircovich identify any such conduct in his opposition.

Accordingly, the Court **GRANTS** Reuters's motion for summary judgment with respect to Mircovich's ninth claim for intentional infliction of emotional distress.

| Case No. | 2:18-cv-00133-CAS-PJWx | Date | April 8, 2019 |
|---|---|---|---|
| Title | SAMUEL MIRCOVICH v. REUTERS AMERICA, LLC ET AL. | | |

### E. Negligent Infliction of Emotional Distress

A negligent infliction of emotional distress claim requires allegations establishing a negligence claim. Long v. PKS, Inc., 12 Cal. App. 4th 1293, 1297 (1993). Reuters contends that this claim must fail because Mircovich's underlying wrongful termination claims are meritless and because Reuters's decision to include Mircovich's position in the RIF was intentional and thus cannot be used as a basis for an negligent infliction of emotional distress claim. MSJ at 23. Mircovich does not respond to either of these arguments, nor has he identified exactly how Reuters acted negligently. Indeed, there is nothing in the record that indicates that Reuters acted negligently rather than intentionally when it terminated Mircovich's employment. See Edwards v. U.S. Fid. & Guar. Co., 848 F. Supp. 1460, 1466 (N.D. Cal.) (noting that an employer's supervisory conduct is inherently intentional and holding that intentional conduct cannot be used as a basis for an negligent infliction of emotional distress claim).

The Court thus finds that Mircovich has failed to create a genuine issue of material fact as to whether Reuters engaged in negligent conduct. Accordingly, the Court **GRANTS** Reuters's motion for summary judgment with respect to Mircovich's tenth claim for negligent infliction of emotional distress.

### F. Negligent Supervision and Retention of Employees

Under California law, "[l]iability for negligent . . . retention of an employee is one of direct liability for negligence, not vicarious liability . . . [and] [l]iability under this rule is limited by basic principles of tort law, including requirements of causation and duty." Phillips v. TLC Plumbing, Inc., 172 Cal. App. 4th 1133, 1139–40 (2009) (citing Restatement (Third) of Agency § 7.05 cmt. c, p. 180). The rule "requires some nexus or causal connection between the principal's negligence in selecting or controlling an actor, the actor's employment or work, and the harm suffered by the third party." Id. at 1140 (citing Restatement (Third) of Agency § 7.05 cmt. c, illus. 5, p. 180). "Negligence liability will be imposed on an employer if it 'knew or should have known that hiring [or retaining] the employee created a particular risk or hazard and that particular harm materializes.'" Id. (citation omitted).

In addition, an employer "is not liable [for negligent hiring or retention] . . . merely because [an employee] is incompetent, vicious, or careless." Robinson v. HD Supply, Inc., No. 2:12-cv-00604-GEB-CAD, 2012 WL 5386293, at *8 (E.D. Cal. Nov. 1, 2012) (citation omitted). Rather, "an employer's duty . . . is breached only when the employer knows, or should know, facts which would warn a reasonable person that the employee

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL    'O'    JS-6

| Case No. | 2:18-cv-00133-CAS-PJWx | Date | April 8, 2019 |
| Title | SAMUEL MIRCOVICH v. REUTERS AMERICA, LLC ET AL. |

presents an undue risk of harm . . . in light of the particular work to be performed." Federico v. Super. Ct., 59 Cal. App. 4th 1207, 1214 (1997); see also Molina v. City of Visalia, No. 1:13-cv-01991-LJO-SAB, 2014 WL 1329711, at *1 (E.D. Cal. Apr. 2, 2014) ("[N]egligence liability will only be imposed upon a supervisor or employer that knew or should have known that the particular hiring/supervision decision or training practice created a particular risk or hazard.") (internal quotation marks omitted). Thus "an employer's liability must be determined in the context of the specific duties the work entails," and liability arises only when the employer "antecedently had reason to believe that an undue risk of harm would exist because of the employment." Federico, 59 Cal. App. 4th at 1215.

Reuters argues that Mircovich's claim is preempted by California's Workers' Compensation Act and that he cannot maintain a claim for negligent supervision and retention where he has suffered no injury independent of his termination. MSJ at 23. Mircovich does not respond to these arguments but merely asserts that "Reuters was clearly negligent in its supervision of [his] supervisors based on the fact that they were allowed to continue to discriminate and retaliate against [him]." Opp'n at 16.

The Court finds that no triable issue of material fact exists with respect to Mircovich's negligent supervision and retention claim. The record is devoid of admissible evidence demonstrating that Reuters had reason to believe that either Rogers or Hamilton posed an undue risk of harm to its employees. Moreover, Mircovich does not argue, nor is there any evidence in the record demonstrating, that Rogers or Hamilton engaged in any discriminatory or retaliatory acts against him in addition to intentionally including him in the RIF.

Accordingly, the Court **GRANTS** Reuters's motion for summary judgment as to Mircovich's eleventh claim for negligent supervision and retention.

## V.    CONCLUSION

For the foregoing reasons, Reuters's motion for summary judgment is **GRANTED** as to each of Mircovich's claims.

IT IS SO ORDERED.

| | 00 | : | 10 |
| Initials of Preparer | | CMJ | |